**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANCIS G. LANDMESSER,** | : |
| **Plaintiff** | : |
| | :     **CIVIL ACTION NO. 3:12-0759** |
| **v.** | : |
| |     **(JUDGE MANNION)** |
| **HAZLETON AREA SCHOOL DISTRICT,** | : |
| | : |
| **Defendant** | : |
| | : |

## MEMORANDUM

Pending before the court are the plaintiff's motion for summary judgment, (Doc. No. 20), and the defendant's motion for summary judgment, (Doc. No. 26). Based upon the court's review of the motions and related materials, the plaintiff's motion for summary judgment will be dismissed, and the defendant's motion for summary judgment will be granted.

## I. PROCEDURAL HISTORY

By way of relevant background, the plaintiff filed the instant employment discrimination action on April 20, 2012. (Doc. No. 1). By order dated September 26, 2012, (Doc. No. 10), the defendant's motion for a more definite statement, (Doc. No. 8), was granted and the plaintiff was directed to file an amended complaint. The plaintiff filed his amended complaint on October 22, 2012. (Doc. No. 11). On November 5, 2012, the defendant filed an answer to the amended complaint. (Doc. No. 12).

On August 14, 2013, the plaintiff filed a motion for summary judgment with attached exhibits. (Doc. No. 20). A brief in support of the motion for summary judgment was filed on August 29, 2013. (Doc. No. 21). On September 18, 2013, the defendant filed a response to the motion for summary judgment, (Doc. No. 22), a response to the brief in support of the plaintiff's motion for summary judgment, (Doc. No. 23), a statement of material facts, (Doc. No. 24), and an opposing brief, (Doc. No. 25). On October 2, 2013, the plaintiff filed documents which the court construes as his reply brief. (Doc. No. 29, Doc. No. 30).

In the meantime, on September 26, 2013, the defendant filed its own motion for summary judgment, (Doc. No. 26), along with a statement of material facts, (Doc. No. 27), and a supporting brief, (Doc. No. 28). The plaintiff filed what the court construes as his opposing brief on October 2, 2013. (Doc. No. 29). The defendant requested and was granted permission to file an amended statement of material facts, which it did on October 9, 2013. (Doc. No. 34)[1]. Plaintiff filed a response to the defendant's motion for summary judgment, (Doc. No. 35), as well as a reply to the amended

---

[1]The defendant filed two amended statements of material facts, (Doc. No. 33, Doc. No. 34), which appear to be identical in substance. The court simply adopts the latter on the docket as the one to which it will refer herein.

statement of facts, (Doc. No. 37)[2], on October 10, 2013. On October 24, 2013, the defendant filed a reply to the plaintiff's response to its corrected statement of material facts, (Doc. No. 38), as well as a reply brief in support of its motion for summary judgment, (Doc. No. 39).

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the

---

[2]The plaintiff filed substantively identical replies to each of the amended statements of material facts filed by the defendant. (Doc. No.36, Doc. No. 37). Again, simply for purposes of clarity, the court refers to the latter reply on the docket herein.

3

matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary

judgment because such a failure "necessarily renders all other facts immaterial." [Celotex Corp., 477 U.S. at 322-23](#); [Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)](#).

## III.    DISCUSSION

The allegations of the plaintiff's amended complaint are relatively straightforward. In his amended complaint, the plaintiff alleges that, despite having met the original qualifications set by the Hazleton Area School District, he was denied a full-time Elementary contract teaching position. Although the plaintiff alleges that he "should have been selected for an elementary position because [he] posses[es] greater experience, qualifications, versatility, and skills than selected candidates and [he is] more suitable for the position," he alleges that he was not given the position because, at the time he interviewed, he was fifty-nine (59) years old and approaching retirement age. As a result of this alleged age discrimination, the plaintiff is seeking monetary and injunctive relief.

In an attempt to demonstrate that there are no material issues of fact for trial and that he is entitled to judgment as a matter of law on his claims, the plaintiff filed a motion for summary judgment. In considering the plaintiff's filing, contrary to Middle District of Pennsylvania Local Rules of Court, Local Rule 56.1, the plaintiff has failed to file a statement of material facts with

appropriate record citations in support of his motion. Local Rule 56.1 provides, in relevant part:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

> * * *

> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

As this court has previously discussed, the requirement of a statement of undisputed material facts, as provided for in Local Rule 56.1, is consistent with Fed.R.Civ.P. 56, which requires the movant to show that there are no genuine issues of material fact for trial. Rocuba v. Mackrell, 2011 WL 6782955 (M.D. Pa. Dec. 21, 2011). Moreover, the purpose of the factual statements required by Local Rule 56.1 is not insignificant:

> These statements are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

Id. (citing Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th

6

Cir.1994) (addressing Local Rule 56.1 for the Southern District of Indiana which provides requirements strikingly similar to that of Local Rule 56.1 for the Middle District of Pennsylvania). See also Ritter v. Virtue, 2010 WL 4942107, at *3 n.1 (M.D.Pa. Nov.30, 2010) ("We will dismiss defendant DeLong's motion for summary judgment for failure to conform her motion to the local rules. Local Rule 56.1 requires that when a defendant files a motion for summary judgment the motion must be accompanied by a separate statement of material facts. Here, DeLong failed to file such a statement."); Equipment Finance, LLC v. Hutchison, 2010 WL 3791481 (E.D.Pa. Sept. 24, 2010) (denying movant's motion for summary judgment for failure to file a statement of undisputed material facts)).

In light of his *pro se* status, the plaintiff was advised at the outset of this action of the requirements of L.R. 56.1 by Standing Practice Order dated May 31, 2012. (Doc. No. 3). In addition, the defendant raised the plaintiff's failure to comply with the requirements of L.R. 56.1 in its opposing brief. (Doc. No. 25). While the plaintiff filed a reply brief responding to certain of the defendant's arguments in opposition to his motion for summary judgment, he made no attempt to address or correct this deficiency in his filing.

Based upon the foregoing, the plaintiff's motion for summary judgment will be dismissed for his failure to comply with the requirements of L.R. 56.1.

In considering the defendant's motion for summary judgment, in an

attempt to controvert the allegations of the plaintiff's amended complaint and establish that no genuine issue of fact remains for trial, the defendant has submitted a statement of material facts supported by record citations. Although the plaintiff has filed a response to some of these facts[3], the plaintiff fails to provide any reference to the record which would support his responses. Again, the plaintiff has failed to comply with L.R. 56.1, which requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements." L.R. 56.1. Therefore, defendant's statement of facts is deemed admitted. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

The defendant's materials provide, in relevant part, that in the Spring of 2010, the Hazleton Area School District, ("District"), had thirteen (13) vacancies in Elementary teaching positions for the 2010-2011 school year. Ninety-five (95) candidates were interviewed for the vacant positions. Of the ninety-five (95) candidates, seventy-three (73) were thirty-eight years of age or under. Twenty-two (22) of the candidates were thirty-nine (39) years of age

---

[3]The plaintiff provides responses only to select paragraphs of the defendant's statement of facts. The court concludes from this that the plaintiff does not oppose those facts to which he does not respond.

or over. After interviews, fourteen (14) candidates received offers to fill the vacant positions[4].

In August 2010, the District filled the thirteen (13) vacancies. Of those hired, two (2) of the thirteen (13) were over the age of forty (40) and three (3) were age thirty-nine (39) at the time of hire, making five (5) of those hired thirty-nine (39) years of age or over.

Eighty-one (81) of the candidates interviewed, including the plaintiff, were not given offers. Of the eighty-one (81), sixty-three (63) were thirty-nine (39) years of age or younger.

According to the defendant's materials, the District's Teacher Hiring Policy of January 23, 2008, was revised with a new policy effective July 23, 2010. The revisions were made to widen the pool of applicants initially selected for an interview. Under both the prior and new hiring policies, numeric scoring rubrics were utilized to screen applicants to determine whether they would be granted an interview. Under the prior hiring policy, a candidate was required to have a minimum score of ten (10) in order to be granted an interview. Under the new policy, a candidate was required to have a minimum score of eight (8) in order to be granted an interview. Under both policies, the numeric scores resulting from application screening are discarded and no longer considered once an applicant has been invited to

---

[4]One of the candidates received an offer, but turned down the position.

interview.

The plaintiff had a score of eleven (11) relative to his initial application screening and was granted an interview by the District, which took place on July 30, 2010.

When interviewing candidates, the Interview Committee, ("Committee"), members valued and focused on the candidates' answers to their interview questions, as well as the candidates' qualifications highlighted within their interview. In addition, the Committee valued prior experience within the District, as well as multiple areas of certification, especially in the field of early childhood education and/or preschools, because the majority of positions available were occurring at the primary levels of kindergarten through third grade. The Committee further valued familiarity and/or expertise in areas of instructional technology; additional certification in the field of English as a Second Language, ("ESL"), because the particular population of ESL students in the District has been steadily growing; additional training in CPR, lifesaving, and crisis intervention, where the applicant highlighted any such training; and prior experience or training in the Step by Step and/or Read 180 programs, which are particular literacy programs that require and utilize only those teachers who have received program-specific training.

On April 26, 2009, the plaintiff submitted an application to the District for an Elementary teaching position. The plaintiff was interviewed by a five

member panel. The plaintiff's interview answers were generally shorter than average and the plaintiff gave what the panel considered a disappointing answer regarding the manner in which he would encourage parent involvement. Specifically, the plaintiff indicated that he would use a behavioral chart and contact the parents on the second offense. During the plaintiff's interview, at least one committee member noted that the plaintiff's response to an interview question was "off the mark."

In addition, the plaintiff received two notations of A- on his interview score sheets. Only three of the candidates hired received an A- rating at all. None of the candidates hired received any more than one A- rating.

The defendant's materials provide that the plaintiff submitted two letters of recommendation from the District Vice Principal, Daniel DeNoia, as well as from his supervising Principal, Maureen DeRose[5]. The plaintiff possessed solely an Elementary Education Certificate.

According to the defendant's materials, overall, the plaintiff did not possess the particular factors valued by the Interview Committee, as described above, to fill a permanent Elementary teaching position.

---

[5]The defendant's materials provide that, consistent with the District's practice of destroying any/all documents submitted during the interview process, as opposed to beforehand, these letters of recommendation were not retained within the plaintiff's personnel file. Defendant was able to subsequently obtain a copy of the letter from Vice Principal DeNoia, but has been unable to locate a copy of Principal DeRose's letter.

The plaintiff was called by the defendant periodically from September 2009 through June 2010, to serve as a substitute teacher to fill in for permanent teachers who were absent or to provide extra help and/or aid in the classroom.

The following is information provided by the defendant relevant to the candidates who were successful in gaining an offer for an Elementary teaching position from the District[6]:

Candidate No. 1 was hired on August 12, 2010. She was thirty-nine (39) years old at the time of her hire and possessed both an Elementary Education and ESL certification. She had served as a Long-Term Substitute within the District for the 2009-2010 school year. Candidate No. 1 also served in the District as an Educational Assistant Program, ("EAP"), Tutor, which was expressly pointed out by a District representative in consideration of her application for employment. She also possessed certification in First Aid, CPR, and AED. In addition, Candidate No. 1 demonstrated prior use and emphasis on Smartboards in the classroom. Candidate No. 1 submitted two letters of recommendation in addition to her application references, both of which were from District employees, and one of which was from a District

_____

[6]Although listed in the defendant's materials, the court has omitted the names of the non-party candidates who where offered a position by the defendant. Instead, the court will simply refer to these individuals as "Candidate No. __".

Principal.

Candidate No. 2 was hired on August 12, 2010. She was forty-two (42) years old at the time of her hire and possessed an Elementary Education Certificate, as well as her Master's degree in Education. She had served as both a daily substitute and a Long-Term substitute within the District and had previously worked within the District as a Teacher's Aide. Candidate No. 2 had a District Principal's recommendation, as well as five others, three of which were from District employees. Candidate No. 2 possessed CPR certification, held a position on a Title I PAC Committee, and participated in the Step by Step training for education in the classroom.

Candidate No. 3 was hired on August 12, 2010. He was twenty-three (23) years old at the time, possessed an Elementary Education certification, and had substituted in the District for a sixty-five day period from February to June of 2010. He was certified in CPR, First Aid, and AED, and in his interview evaluation was noted for his use of technology and Smartboards. Candidate No. 3's letters of recommendation included the recommendation of a District Principal.

Candidate No. 4 was hired on August 12, 2010, and was twenty-two (22) years old at the time. She possessed an Elementary Education certification, as well as significant prior experience working in a daycare. She completed a year of student teaching in the District and was noted for having

completed Read 180 literacy training during the time. Candidate No. 4 had six letters of recommendation, including one which was from another District employee.

Candidate No. 5 was hired for an elementary long-term substitute position on August 26, 2010[7]. She was twenty-three (23) years old at the time of her hire, had an Elementary Education certification and had previously completed a year of student teaching within the District, as well as an additional 18 days served as a substitute. Candidate No. 5 was noted in her interview evaluation for completing an elementary teaching practicum in Philadelphia and participating in both EAP tutoring and Read 180 training in the District. Candidate No. 5 possessed CPR certification and submitted three letters of recommendation, two of which were from District teaching staff.

Candidate No. 6 was hired on August 12, 2010, and was thirty-nine (39) years old at the time. She possessed an Elementary Education certification, as well as her Master's Degree, plus an additional fifteen credits in Education. Candidate No. 6 was formerly employed as an Elementary teacher within the District for six years, from 1996-2002, and had prior experience in Early Intervention and as a Preschool teacher. She also participated in the EAP

---

[7]As indicated, Candidate No. 5 was hired for a separate long-term substitute position, not any of the thirteen (13) vacant permanent Elementary positions, thus the discrepancy with the number of vacant permanent Elementary positions and the number of candidates hired.

tutoring program within the District and submitted four letters of recommendation, all of which were from District representatives and two of which were from a Principal and a Vice Principal.

Candidate No. 7 was hired on August 12, 2010, and was thirty-four (34) years old at the time. She possessed an Elementary Education certification, as well as a number of credits in the field of instructional technology. She had ten years of previous experience working within the District as a Therapeutic Staff Support, ("TSS"), assisting individual students in the classroom with behavioral health issues and also possessed prior experience as a preschool teacher. Candidate No. 7 had served as a daily substitute and also completed her student practicum within the District. She was certified in CPR, First Aid, and Crisis Intervention. She submitted sixteen letters of recommendation, twelve of which were from District representatives, five of whom were Principals and an Assistant Principal.

Candidate No. 8 was hired on August 12, 2010, and was thirty (30) years old at the time of her hire. She possessed an Elementary Education certification and had previously served as a Long-Term substitute, as well as a Homebound Instructor for the District for two years, from 2008 through 2010. Candidate No. 8 was certified in CPR and was noted in her interview evaluation for completing Step by Step training for education in the classroom. She submitted eleven letters of recommendation, four of which were from

District representatives and two of which were from a Principal and Vice Principal.

Candidate No. 9 was hired on August 12, 2010, and was twenty-three (23) years old at the time of her hire. She possessed a certification in Elementary Education and was noted for potential use as a swimming coach within the District. She completed a year of student teaching within the District and also had prior experience teaching in a Montessori school, which was highlighted within her interview evaluation. Candidate No. 9 was certified in CPR, First Aid, and AED, and submitted eight letters of recommendation, including two from District teaching staff.

Candidate No. 10 was hired on August 12, 2010, and was twenty-seven (27) years old at the time. She possessed an Elementary Education certification, as well as her Master's Degree in Education. Candidate No. 10 previously served 360 days over two years as a Long Term Substitute in the District. She had prior experience as a TSS in the District and participated in EAP tutoring in the District. Candidate No. 10 was certified in CPR and First aid, and submitted five letters of recommendation, four of which were from District representatives and two of which were from a Principal and Assistant Principal.

Candidate No. 11 was hired on August 26, 2010, and was thirty-nine (39) years old at the time. She was noted as having multiple certifications in

both elementary and early childhood education. She had a total of four years' experience employed as a pre-Kindergarten and a preschool teacher. Candidate No. 11 had student taught in the District and served in the District for over a year from February 2009 through June 2010. She possessed CPR training and was noted for an emphasis on instructional technology and her file included five letters of recommendation, including one from a District Principal.

Candidate No. 12 was hired on August 26, 2010, and was twenty-three (23) years old at the time of her hire. She possessed multiple certifications in both elementary and early childhood education. She had student taught and served as a substitute for a year within the District. Candidate No. 12 possessed certification in First Aid, CPR, AED, and lifeguarding. She submitted four letters of recommendation, including three from District representatives, including two teachers and a Principal.

Candidate No. 13 was hired on August 12, 2010, and was twenty-nine (29) years old at the time. She possessed multiple certifications in Elementary Education, Early Childhood Education, Spanish, and ESL, as well as a certification to Teach English as a Foreign Language. Candidate No. 13 previously substituted within the District and had prior experience as a teacher and student teacher within the Hanover School District. She submitted four letters of recommendation.

Finally, Candidate No. 14 was hired on August 12, 2010, and was forty-six (46) years old at the time. She possessed an Elementary Education certification and had twenty-four years of prior experience as a parochial school teacher in the local Diocese, where she worked with special needs students at times. Candidate No. 14 had previously substituted within the District and submitted four letters of recommendation, including one from the Assistant Director of Elementary Education.

According to the defendant's materials, the District Interview Committee collectively identified and recommended for hire the above candidates as the most outstanding based on one or more of the following: their versatility relative to multiple certifications, greater or more substantial degree of experience, more advanced or diverse training, familiarity with instructional technology, and a superior interview relative to the answers provided in response to the questions asked. Moreover, the Administration advised the Board of School Directors and recommended the hire of the foregoing candidates based on the recommendations for hire received from the Interview Committee.

With the above facts in mind, ADEA claims are evaluated under the burden shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). Under McDonnell Douglas, the plaintiff bears the burden of proof as well as

the initial burden of production and must first demonstrate a *prima facie* case of discrimination. Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009). To demonstrate a *prima facie* case, the plaintiff must show: "first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Id. (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)). The burden of showing a *prima facie* case is not intended to be onerous. Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the employment action. Id. at 690 (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). If the employer identifies a non-discriminatory reason for the adverse employment action, the burden of production returns to the plaintiff to demonstrate that the reason offered by the employers is merely pretextual. Id. (citing Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 n. 4 (3d Cir. 1995)).

In this case, the defendant argues that the plaintiff has failed to establish a *prima facie* case of age discrimination. Specifically, while the

defendant does not challenge the plaintiff's ability to meet the first three requirements, it argues that the plaintiff has failed to establish that those individuals who were hired for the thirteen (13) Elementary teaching positions were sufficiently younger than the plaintiff in order to permit a reasonable inference of age discrimination. Specifically, the defendant argues that two (2) of the thirteen (13) candidates were over forty (40) years of age and were within the plaintiff's protected class, while three (3) more were thirty-nine (39) years of age at the time of hire, just outside of the protected class age. Because five (5) of the thirteen (13) candidates were within or very close to the protected class age, the defendant argues that the plaintiff has failed to meet the fourth element of his *prima facie* case.

In considering the defendant's argument, inclusion of a replacement in the protected class is not necessarily determinative under the fourth element of the ADEA *prima facie* case. In Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995), the Third Circuit stated that an ADEA plaintiff must demonstrate that he "was replaced by a sufficiently younger person to permit an inference of age discrimination." 72 F.3d at 330. This method of proof was affirmed in O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). In

respect of the "sufficiently younger" standard, "there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." Id. at 307 (quoting Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999)) (omissions in original).

Here, the record demonstrates that the plaintiff was fifty-nine (59) years old at the relevant time. The oldest of the other candidates who received an offer for an Elementary teaching position was forty-six (46), some thirteen years younger than the plaintiff. The court finds that this is sufficiently younger in order to satisfy the fourth requirement of the plaintiff's *prima facie* case.

Having determined, as a matter of law, that the plaintiff has established a *prima facie* case, the court's analysis continues to the next stage of the McDonnell Douglas evaluation. See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009). At this stage, the defendant must identify a legitimate non-discriminatory reason for the employment action. The defendant's burden is "relatively light," and a defendant can establish a legitimate reason, "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Here, the defendant provides that the plaintiff was not offered a position simply because he was not as qualified or outstanding as the other thirteen

(13) candidates who were hired[8]. The defendant proffers that each of the candidates who was hired possessed additional or multiple qualifications valued by the Committee which the plaintiff did not, and/or demonstrated a superior interview performance, which made them more desirable than the plaintiff. Given the facts relating to the qualifications of the candidates as set forth above, as well as considering the values sought by the Committee in selecting candidates, when taken as true, this would permit the conclusion that there was a nondiscriminatory reason for not hiring the plaintiff. A summarization of the defendant's materials establish that nine (9) of the thirteen (13) successful candidates had Master's Degrees, Early Childhood Education Experience, Multiple Certifications, or Instructional Technology Degrees. The plaintiff had a Bachelor's Degree, had only a professional certification in Elementary Education, and had limited early childhood education experience. In addition, five (5) of the candidates completed their Student Teaching in the District, while the plaintiff did so outside of the District. All candidates had prior experience working as a substitute teacher, student teacher or teacher. Further, ten (10) of the thirteen (13) candidates offered a position possessed certification for one or more of First Aid, CPR, or AED. The plaintiff possessed none of these certifications. The plaintiff also

[8]The defendant does not contend that the plaintiff was not minimally qualified for the position, but simply that those chosen possessed additional or greater qualifications and interview performance.

lacked training in the Read 180 and Step by Step Programs, which four (4) of the successful candidates possessed. Finally, two (2) of the candidates possessed certification in the field of English as a Second Language, which the plaintiff did not.

Given this, the burden shifts back to the plaintiff to demonstrate that the defendant's legitimate, nondiscriminatory reason was pretext for a discriminatory motive. Here, "the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (citing Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)). At this stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

To successfully illustrate grounds that the employer's articulated reasons should be disbelieved under the first part of the pretext standard, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them 'unworthy of credence'" Id. (quoting [Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 531 (3d Cir. 1992)](#)).

Here, the plaintiff has failed to cite to any admissible evidence of record to support his claim that he displayed superior qualifications and competency that exceeded the hired candidates, such that the court could conclude that the defendant's proffered reason for not hiring the plaintiff was pretextual. Instead, the plaintiff relies on his own unsupported allegations or suspicions. The facts of record with respect to the qualifications of the candidates speak for themselves and the plaintiff has presented nothing to refute these facts. Although the plaintiff challenges the defendant's decision relative to his skills and/or qualifications versus those candidates who were offered a position, the plaintiff has cited to no record-supported facts that would support the inference that age was a determinative factor for not hiring the him.

Under the second part of the pretext standard, the plaintiff must demonstrate that discrimination was more likely than not the but-for cause of his failure to be hired. To do so, the plaintiff "cannot simply attempt to show that the Employer's decision was wrong or mistaken." [Fuentes, 32 F.3d at 765](#). To demonstrate that an employer was motivated by a discriminatory reason despite its articulated reasons, the plaintiff could show, for example, "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's

protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998) (citing Fuentes, 32 F.3d at 765).

Along this line, the plaintiff attempts to establish that the defendant discriminated against another individual by pointing to an appellate court ruling in another age discrimination case filed against the defendant almost fourteen years ago. See Potence v. Hazleton Area School District, 357 F.3d 366 (3d Cir. 2004) (affirming district court's decision denying the defendant's motion for judgment as a matter of law and alternative motion for new trial). However, the plaintiff has failed to establish any relevance under Fed.R.Evid. 402 between his case and that of Potence. See McLeod v. Parsons, 73 Fed.App'x. 846 (6th Cir. 2003) (finding evidence concerning other specific past employment discrimination lawsuits filed against defendant was not relevant where there was no clear nexus between the prior lawsuits and the pending action). Here, the plaintiff has failed to establish any nexus between his lawsuit and the lawsuit filed against the defendant fourteen years ago. In fact, the defendant's materials provide that the Potence case involved entirely different administrators than does the instant action. In addition, the position applied for in Potence was entirely different than in the instant case. In Potence, the District had advertised for one position for a plumbing/HVAC

instructor and received five applications, whereas in the instant case the District had open thirteen Elementary teaching positions and received some ninety-five (95) applications. Further, different and distinguishable are the application processes utilized in each case. In Potence, the plaintiff was required to take a practical examination on which he had to name parts of a refrigeration unit and was found unqualified for the job because he lacked a refrigerant recapturing certification, requirements which were not listed in the advertisement for the position, nor had anything to do with either HVAC or plumbing instruction. Here, each of the qualifications and certifications considered by the defendants in relation to the advertised positions were directly related and relevant to the vacant Elementary teaching positions.

Moreover, even if the plaintiff could establish the relevance of the Potence decision, it remains inadmissible under Fed.R.Evid. 403, as more prejudicial than probative. See McLeod, supra, (the potential prejudice of introducing evidence of other specific past employment discrimination lawsuits filed against defendant would have outweighed its probative value, as it would have the effect of misleading the jury as to the issues in the pending matter); Outley v. City of New York, 837 F.2d 587, 595 (2d Cir. 1988) (evidence of prior lawsuits brought against defendant police officers was "too remote" and, while possibly probative as to bias, would likely lead to multifariousness and confusion of the issues). Thus, the court finds the plaintiff's reliance upon

Potence to support his own claims of age discrimination and to challenge the defendant's motion for summary judgment to be unavailing.

In light of the foregoing, the court finds that the plaintiff has failed to meet his burden that the defendant's legitimate nondiscriminatory reason for not hiring plaintiff is a pretext for discrimination and, as such, the defendant is entitled to summary judgment on the plaintiff's age discrimination claim. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: November 12, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-0759-01.wpd